Filed 3/1/24 P. v. Foster CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B324335 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. A969446 |
| DAYMOND LEE FOSTER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Craig E. Veals, Judge. Affirmed.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael C. Keller and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

In 1989, a jury convicted defendant and appellant Daymond Lee Foster of first degree murder. The jury also found a robbery-murder special circumstance allegation true, which included a finding beyond a reasonable doubt that Foster was the actual killer.

In 2022, Foster filed a petition for recall and resentencing under former Penal Code section 1170.95.[1] The trial court denied the petition, concluding the record of conviction demonstrated as a matter of law that Foster was the actual killer, and thus Foster is ineligible for resentencing. On appeal, Foster argues the trial court's conclusion constitutes error, and asks that his case be remanded with instructions to issue an order to show cause and hold an evidentiary hearing. We affirm.

## PROCEDURAL BACKGROUND

In 1989, the Los Angeles County District Attorney filed an amended information charging Foster (a.k.a. Rodney Thompson) and codefendant Randy Whittenburg with various crimes.[2] The amended information charged Foster with murder (§ 187, subd. (a); count one); attempted second degree robbery (§§ 664/211; count two); and second degree robbery (§ 211; count three). It further alleged Foster: (1) personally used a firearm in the

---

1    All undesignated statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute.

2    For purposes of clarity, we note that Foster was charged under the name "Rodney Thompson, a.k.a., Damon Lee Foster," and was referred to at his original trial as Rodney Thompson.

commission of counts one through three (§ 12022.5, subd. (a)); and (2) murdered the victim while engaged in the commission and attempted commission of robbery (§ 190.2, subd. (a)(17)).[3]

Foster and Whittenburg had a joint trial with separate juries. Foster's jury found him guilty on all counts. It also found true the allegations on all counts that Foster personally used a firearm, in addition to finding true the allegation that Foster committed the murder during the commission and attempted commission of robbery. The trial court sentenced Foster to life without the possibility of parole on the murder count. On direct appeal, a different panel of this court affirmed the judgment.

In February 2022, Foster filed a resentencing petition under former section 1170.95. The trial court tentatively ruled Foster was ineligible for relief as a matter of law because he was the actual killer, then appointed counsel on Foster's behalf. The prosecution filed a response, and attached as exhibits this court's opinion resolving Foster's direct appeal, the jury instructions from Foster's trial, and the jury verdicts.

In August 2022, the trial court held a hearing on Foster's eligibility for relief. After both sides submitted without argument, the court denied Foster's petition. In denying relief, the court explained the record demonstrated the jury convicted Foster as the actual killer, in addition to finding he personally used a firearm in the commission of the murder.

Foster timely appealed. We granted the parties' requests for judicial notice and to augment the record to include various

---

3    The amended information charged Whittenburg with counts one through three and alleged the special circumstance on count one, but did not charge him with personal use of a firearm on any count.

3

documents, including the closing arguments, jury instructions, and verdict forms from Foster's original trial, as well as this court's opinion resolving Foster's direct appeal.

## FACTUAL BACKGROUND

The following facts are taken from this court's opinion resolving Foster's direct appeal. We include this information solely to provide background and context for the parties' arguments, and do not rely on it to resolve this appeal. (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 222, fn. 2.)

"On the night of September 17, 1987, Feliz Zuniga Estrada ('Estrada') accompanied his brother-in-law, Juan Rivas Avendano ('Avendano') to make a call from the public telephones outside a convenience store in their neighborhood in Los Angeles. While they were standing at the telephone, two men approached from behind. Estrada and Avendano turned, and Estrada saw Foster pointing a pistol at Avendano. Whittenberg was standing at Foster's side and did not have a gun. Foster, speaking English, demanded money, pointing the gun at Avendano. Whittenberg grabbed Estrada's arm, put his hand in Estrada's left front trouser pocket and took money from his person. The amount taken was less than $10.

"Avendano resisted, grabbing the outside of his pockets and shaking his head from side to side in a negative manner. Avendano removed his hands from his pockets, flashed them at appellants and dropped them. He then pushed Foster's gun aside with his hand and said 'Run.' Whittenberg let go of Estrada's arm, and both victims fled. As Avendano and Estrada ran toward the market, Estrada looked back and saw Foster fire three or four shots in rapid succession directly at Avendano. Avendano collapsed in front of the market and was helped inside by

4

Estrada. He had been shot four times and died at the scene. Appellants fled.

"The preliminary hearing testimony of Rell King, who witnessed the shooting, was read to both juries. She was standing across the street from the convenience store when she saw Foster and another man confront a third man she identified as Avendano. She could not hear what was said, but observed Foster draw a handgun and point it at Avendano. The victim shook his head from side to side, pulled his hands from his pockets and dropped them to his side and began to back away from Foster. King heard Foster fire four shots at Avendano. Foster and his companion then fled, running toward King. King did not see Estrada until she entered the store after Avendano died. She identified Foster as the shooter from a photographic lineup and at both the preliminary hearing and trial.

"Marcus Branson testified that he was on his way to the same market when he heard four gunshots. He then saw Foster and a man he was unable to identify running toward him from the direction of the market. Prior to the night of the shooting Branson often had seen Foster playing basketball at the school Branson attended. As they ran past Branson, one man said 'I think we killed them.' The other responded 'I know. Let's go.'

"The Foster jury heard the testimony of Los Angeles Police Detective William Baird who interviewed Foster after his arrest. Foster told Baird that he had encountered Whittenberg near the convenience store on the evening of the shooting. Whittenberg announced that he was planning to commit a robbery. According to Foster's account, Whittenberg accosted the victims, pointed a gun at them, struggled with one victim when he resisted and

then shot that victim while Foster fled. Foster claimed that his role was limited to removing money from Estrada's hand.

"The Whittenberg jury heard Los Angeles Police Department Detective Eric Campos testify to a statement made by Whittenberg after his arrest in which he implicated Foster as the instigator of the robbery which culminated in Foster's shooting of Avendano. According to Whittenberg, his only role was taking the money from Estrada's hand.

"Whittenberg presented no defense. Foster offered the testimony of a private investigator who contradicted Nell King's testimony about the distance from her vantage point to the site of the shooting. A search of the appellants' homes revealed no property relating to the crimes." (*People v. Foster et al.* (Feb. 26, 1991, B042375) [nonpub. opn.], fn. omitted.)

## DISCUSSION

### I.    Governing Law

The Legislature enacted Senate Bill No. 1437 (SB 1437) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (c); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

SB 1437 also added section 1170.95 to the Penal Code which, as mentioned above, was later renumbered to section 1172.6. (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10.) This section permits individuals who were convicted of felony murder

6

or murder under the natural and probable consequences doctrine, but who could not be convicted of murder following SB 1437's changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1172.6, subd. (a).) The statute also provides relief for certain individuals convicted under any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (*Ibid.*)

A petition for relief under section 1172.6 must include a declaration by the petitioner that he or she is eligible for relief based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should the petitioner seek appointment. (§ 1172.6, subd. (b)(1).)

Subdivision (c) of section 1172.6 provides: "Within 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's response is served. These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."

If the trial court determines the petitioner has made a prima facie showing for relief and issues an order to show cause, the court must hold a hearing "to determine whether to vacate

the murder . . . conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1).) At the hearing, the parties may rely on the record of conviction or present "new or additional evidence" to support their positions, and "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

## II.      Analysis

Foster argues the trial court erred by denying his petition as a matter of law. Specifically, he contends: (1) in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*), the felony murder special-circumstance finding did not render him ineligible for relief as a matter of law; (2) instructions on the special-circumstance allegation were ambiguous as to which codefendant could be the actual killer or had the intent to kill; (3) the jury was not instructed on Foster's liability as an accomplice or aider and abettor for the felony-murder special circumstance; and (4) the personal use of a firearm finding did not preclude the possibility that it was Whittenberg, not Foster, who killed the victim.

Foster's contentions are without merit. Although the jury was instructed on the felony murder rule, Foster is ineligible for section 1172.6 relief as a matter of law, because the record demonstrates the jury convicted him of murder under the theory he was the actual killer. (See § 189, subd. (e)(1) [actual killers are still liable for felony murder under current law]; *Lewis*, *supra*, 11 Cal.5th at p. 959 [section 1172.6 relief extends to convicted

8

murderers who could not be convicted under current law, but does not extend to actual killers].)

In concluding Foster is ineligible for relief as a matter of law, we first turn to the jury instructions and verdicts. Using CALJIC No. 8.80, the trial court instructed the jury, in pertinent part, as follows regarding the special circumstance:

> If, and only if, you find *the defendant in this case* guilty of murder in the first degree, you must then determine if the following special circumstance is true or not true that the murder was committed while the defendant was engaged in the commission of a robbery or attempted robbery.

> The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt whether a special circumstance is true, you must find it to be not true.

> *If, and only if, you find beyond a reasonable doubt that the defendant was the actual killer, then you must also find beyond a reasonable doubt that the defendant intended to kill a human being.*

> In order to find a special circumstance alleged in this case to be true or untrue, you must agree unanimously. (Italics added.)

It is thus clear that, by finding the special circumstance true on Foster's murder count, the jury concluded beyond a reasonable doubt Foster was the actual killer (in addition to finding he harbored the intent to kill).

9

It is true, as Foster notes, that the trial court instructed the jury as follows using CALJIC No. 1.11: "The word 'defendant' applies equally to each defendant unless you are expressly instructed otherwise." According to Foster, when viewed in tandem, CALJIC Nos. 8.80 and 1.11 created an ambiguity regarding whether the jury found Foster was the actual killer, or alternatively, found Whittenburg was the actual killer. We discern no such ambiguity. CALJIC No. 8.80, as given in Foster's case, clearly specified that it was referring to "the defendant *in this case*." (Italics added.) Because Foster and Whittenburg were tried by separate juries, it was clear to the jury that the instruction was referring to Foster.

Other parts of the record likewise support the conclusion that Foster's jury convicted him of murder as the actual killer. For example, that was the sole theory the prosecution presented to the jury during closing arguments. The prosecution argued to the jury:

> What happened during the course of this robbery? What happened is the evidence is clear that someone was gunned down in coldblooded murder and Mr. Thompson [a.k.a. Foster] is the one that did it. . . . [¶] What happened was that Mr. Thompson [Foster] shot him. Not once. Not twice. Not three times. But four times. He hit him each and every time. He shot him at close range in the hand, he shot him at close range in the side, and as Mr. Avendano was fleeing for his life, he shot him twice in the back in coldblooded murder . . . . [¶] The evidence is clear Mr. Thompson is the murderer in this case.

In his reply brief, Foster does not dispute the fact that the prosecution's sole theory was that he was the actual killer.

10

Additionally, when addressing the jury regarding the special circumstance allegation, the prosecution explained why the evidence demonstrated Foster harbored the intent to kill. In arguing this point, the prosecution again expressed its sole theory that Foster was the actual killer:

> How can you tell that Mr. Thompson [Foster] intended to kill Mr. Avendano? You can tell by the number of times he was shot. If he just wanted to wound Mr. Avendano, he could have stopped after shooting him in the hand. He could have stopped after shooting him in the side. But, no, that's not where he stopped. He didn't stop there at all. He waited until the man was fleeing, an unarmed fleeing man, running for his life, and then shot him twice in the back. [¶] If that isn't intent to kill, ladies and gentlemen, then I don't know what is.

Because the prosecution's sole theory was Foster was the actual killer, it follows logically that the jury convicted him of murder under that theory.[4]

Foster argues the jury's finding that he personally used a firearm in the commission of the murder does not prove, as a matter of law, that the jury convicted him under the theory he was the actual killer. Although it may be correct that such a personal use true finding may not be dispositive in all section 1172.6 cases, here, it provides further support for what the rest of the record demonstrates, i.e., that the jury convicted Foster as the actual killer. In other words, the jury's true finding on the

_____

4 Consistent with the prosecution theory that Foster was the actual killer, the District Attorney brought no personal firearm use allegations against codefendant Whittenburg.

special circumstance allegation demonstrates as a matter of law that Foster is ineligible for section 1172.6 relief, and the jury's true finding on the firearm enhancement only bolsters that conclusion.

Contrary to Foster's assertions on appeal, *Strong* is inapplicable to his case. *Strong* deals with a fairly narrow set of circumstances in which the trial court denied section 1172.6 relief as a matter of law based on an outdated jury finding that the defendant was a major participant in the felony underlying the murder conviction who acted with reckless indifference to human life. (*Strong*, *supra*, 13 Cal.5th at p. 703.)[5] Here, by contrast, the trial court denied relief based on a conclusion that the record demonstrated as a matter of law Foster was convicted of murder as the actual killer. *Strong* thus deals with an issue not present in Foster's case.

We likewise reject Foster's argument that remand is warranted because current law would require the trial court to instruct the jury using CALCRIM No. 703. As Foster points out, a trial court's sua sponte duty to instruct the jury with CALCRIM No. 703 regarding "the mental state required for accomplice liability when a special circumstance is charged" arises when "there is sufficient evidence to support the finding that the defendant was not the actual killer." (Bench Note to CALCRIM No. 703, citing *People v. Jones* (2003) 30 Cal.4th 1084, 1117.)

---

5       *Strong* held: "Findings issued by a jury before [*People v.*] *Banks* [(2015) 61 Cal.4th 788] and [*People v.*] *Clark* [(2016) 63 Cal.4th 522] [that a defendant was a major participant who acted with reckless indifference to human life] do not preclude a defendant from making out a prima facie case for relief under Senate Bill 1437." (*Strong*, *supra*, 13 Cal.5th at p. 710.)

12

Here, even assuming (without deciding) that a CALCRIM No. 703 instruction would be required under current law based on the evidence presented in Foster's case, Foster's record of conviction nevertheless demonstrates the jury found beyond a reasonable doubt he committed murder as the actual killer, rendering him ineligible for section 1172.6 relief as a matter of law.[6]

Foster lastly suggests the trial court engaged in improper factfinding based on its statement "the evidence established" Foster was the actual killer. We need not address that contention, because we review the court's ruling rather than its reasoning. (*People v. Brooks* (2017) 3 Cal.5th 1, 39.) For the reasons expressed in this opinion, the court's ruling was legally correct. The record demonstrates Foster is ineligible for section 1172.6 relief as a matter of law as the actual killer.

---

6    Many of Foster's arguments on appeal are premised on the notion that, because there was *some* evidence presented at trial suggesting he was not the actual killer (i.e., his statements to police that Whittenburg was the killer), his case must be remanded for an evidentiary hearing. This premise is incorrect. The record demonstrates the jury convicted Foster as the actual killer.

13

## DISPOSITION

The order denying Foster section 1172.6 relief is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, P. J.

We concur:


COLLINS, J.


ZUKIN, J.

14